IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARCUS WILLIAMS,<br><br>               Petitioner,<br><br>vs.<br><br>PAUL GONYEA, Superintendent, Mohawk Correctional Facility,<br><br>               Respondent. | No. 9:16-cv-00460-JKS<br><br>MEMORANDUM DECISION |

Marcus Williams, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Williams is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Mohawk Correctional Facility. Respondent has answered the Petition, and Williams has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On August 4, 2011, Williams was charged with criminal possession of a weapon in the second degree. On direct appeal of his conviction, the Appellate Division of the New York Supreme Court recounted the following facts underlying the charge against Williams:

> A police captain heard gunshots, and an identified citizen then gave him a description of the shooter and his direction of flight from the area in which the gunshots originated. Other police officers who heard the broadcast description of the shooter observed [Williams] in a driveway approximately two blocks from the scene of the shooting, and he was nervous, sweating and breathing heavily. The police observed that he matched the description of the suspect, and he fled when he saw the unmarked patrol car. [Williams] ran behind a house out of the sight of an officer who pursued him, but he emerged quickly with his hands up. Although [Williams] was frisked, no weapon was recovered from his person. He was handcuffed, and other police officers quickly recovered a gun inside a grill in the backyard of the house behind which [Williams] had run. As the police were conducting a showup identification procedure with the identified citizen, who was brought to the scene

where [Williams] was detained, [Williams] spontaneously yelled out to his family nearby the name of the identified citizen and that this person had seen [Williams] shoot the gun. [Williams] was arrested and, after being advised of his *Miranda* rights, he gave an inculpatory statement to the police.

*People v. Williams*, 12 N.Y.S.3d 699, 700 (N.Y. App. Div. 2015).

The trial court subsequently held a *Huntley*[1] hearing regarding the admissibility of Williams' statements to his family before he was taken into custody by the police, premised upon Williams' claim that he was arrested without probable cause. Defense counsel argued:

> [A]t the time of the arrest, [Williams] was simply standing in a private driveway at a time when he noticed four people running at him with weapons pointed at him. He then ran in fear for his safety, stopped at the corner of the house, where he was then handcuffed, taken to the ground, and then actually placed in custody at that point and our position would be the officers had absolutely no probable cause at that time that [Williams] had committed a crime or was about to commit a crime or was involved in committing a crime.

After hearing testimony from Syracuse Police Captain John Brennan and Police Detective James Quatrone, the hearing court found that Williams was not in *Miranda* custody when he made the statement and that the statement, and the fact that police knew his grandmother lived at the house where he was found, were themselves sufficient for probable cause to put him in the police car, which then constituted *Miranda* custody. The court reasoned that the level-three intrusion[2] turned into level-four, probable cause to arrest, after Williams, without denial of his constitutional rights,

---

[1] *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965). The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

[2] In *People v. LaPene*, 352 N.E.2d 562 (N.Y. 1976), the New York Court of Appeals laid out a sliding scale of justifiable police intrusion, short of probable cause to arrest, which specified three distinct levels of intrusion correlating the allowable intensity of police conduct to the nature and weight of the facts precipitating the intrusion. The third level, at issue here, encompasses the statutory right provided by New York Criminal Procedure Law ("CPL") § 140.50(1), which authorizes a forcible stop and detention of a person when a police officer entertains a reasonable suspicion that the person has committed, is committing, or is about to commit a felony or misdemeanor. *See People v. Martinez*, 606 N.E.2d 951, 952 (N.Y. 1992).

2

made statements implicating himself as the shooter, and the police found a gun within 20 to 30 feet of Williams in his grandmother's grill.

On November 28, 2011, Williams appeared with counsel to plead guilty to the charge. Prior to accepting his guilty plea, the court explained that "the specific terms of the plea proposal would be if you entered a plea of guilty to criminal possession of a weapon in the second degree, I would give you if you took the offer today the lowest that I could give you, which is seven years determinate plus five years post-release supervision." Williams confirmed that he understood the terms of the deal. He additionally denied that he had received other statements or promises to influence his decision to plea guilty, and denied that he had been threatened. Williams stated that he was 32, a U.S. citizen, and could read and write English. He acknowledged that he had sufficient time to discuss his case with his attorney, and that he had no physical or mental problems that would affect his understanding of the plea proceedings. The court explained the rights he was giving up, and Williams confirmed his understanding that he was waiving those rights.

Williams answered affirmatively when asked, "Do you admit on or about July 12, 2011, in the City of Syracuse, County of Onondaga, that you possessed a loaded firearm at a place other than your home or place of business, do you admit having done that?" Williams additionally admitted that he was convicted in April 2000 of first-degree robbery for which he received a 7-year term of imprisonment, and stipulated that, based on that prior conviction, he was a second violent felony offender.

At his sentencing hearing, Williams requested to withdraw his guilty plea. Williams stated that he was not guilty and that the police wrongfully arrested him before they found the gun. Williams argued that the proof against him was not strong. The court denied the motion and

imposed the agreed-upon sentence of 7 years' imprisonment followed by 5 years of post-release supervision.

Williams filed a *pro se* motion to set aside his sentence pursuant to CPL § 440.20 on the ground that he was improperly sentenced as a second violent felony offender because second-degree weapons possession was not a violent felony. The court rejected Williams' motion because Williams had a prior violent felony conviction and his current offense was also a violent felony.

Williams then filed a *pro se* motion to vacate his conviction pursuant to CPL § 440.10. In that motion, he argued, among other grounds not relevant to the instant Petition, that counsel was ineffective for not investigating his case and not advising him as to his "actual charge," which subsequently rendered his plea unknowing, unintelligent, and involuntary, and that the police lacked probable cause to arrest him. In support of his motion, Williams attached affidavits from his girlfriend and a neighbor, which indicated that Williams was not outside when the shootings occurred. The County Court denied the motion on August 7, 2013. The court found that the ineffective assistance of counsel claim was barred by CPL § 440.10(2)(c)[3] and alternatively concluded that the plea record evidenced Williams' voluntary plea. The court also stated that the affidavits were not properly considered in a § 440.10 motion and, in any event, Williams had not shown that he could not have obtained this evidence with the exercise of diligence such that the evidence could not be considered "new."

---

[3] N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a ]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . .").

Through counsel, Williams then appealed his conviction to the Appellate Division on the ground that the court erred in declining to suppress his pre- and post-*Miranda* statements because they were the product of an arrest for which the police lacked probable cause. Williams additionally filed a *pro se* supplemental brief in which he argued that: 1) the hearing court erred in finding that his arrest was supported by probable cause; 2) the evidence before the grand jury was legally insufficient; and 3) the court erred in denying his motion to withdraw his guilty plea. The Appellate Division unanimously affirmed his conviction on June 19, 2015. *Williams*, 12 N.Y.S. 3d at 701. Williams and his counsel sought leave to appeal the issues in the counseled and *pro se* briefs, which was denied without comment on September 3, 2015. *People v. Williams*, 40 N.E.3d 587, 587 (N.Y. 2015).

Williams timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on April 26, 2016. *See* 28 U.S.C. § 2244(d)(1)(A). By Court permission, Williams filed an Amended Petition (Docket No. 11), which is now before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Amended Petition before this Court, Williams argues that: 1) the hearing court erred in not suppressing his statement on the ground that it was obtained by an unlawful arrest that lacked probable cause; 2) the hearing court erred in concluding that the police had probable cause to arrest him; 3) the grand jury evidence was legally insufficient; and 4) the court erred in denying his motion to withdraw his guilty plea.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

5

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim

not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Williams has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

A.  *Unlawful Search and Seizure* (Grounds 1 and 2)

Williams first claims that the trial court erred in concluding that the police had probable cause to arrest him such that his arrest was lawful and his statement was admissible. However, any

7

challenge to the search and seizure is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[4]" federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient

---

[4] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

to give this Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled. *See id.* at 70 & n.1. Williams has not asserted the existence of an unconscionable breakdown of that process, nor has he alleged any facts that would demonstrate such a breakdown in this case. Williams therefore cannot prevail on his challenge to the legality of the search and admission of his statement.

B. *Grand Jury Defects* (Ground 3)

Williams additionally argues the evidence presented to the grand jury was legally insufficient. As an initial matter, it is well settled that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett*, 411 U.S. at 267); *see United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non jurisdictional defects in the prior proceedings."). Because the events which give rise to this claim occurred prior to Williams' guilty plea, the claim is foreclosed by the *Tollett* bar.

Moreover, Williams' subsequent conviction forecloses any potential relief with respect to such claim. For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates

*a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."). In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)).

District courts in this Circuit have applied this reasoning equally to a conviction achieved by a guilty plea. *See, e.g.*, *Lloyd v. Walker*, 771 F. Supp. 570, 576-77 (E.D.N.Y. 1991) ("Having admitted to the factual basis of the charges against him upon entering a plea of guilty, any error in the proceeding which led to his indictment is . . . rendered harmless, and is not a cognizable claim in a federal habeas proceeding." (internal citation omitted)); *Alston v. Ricks*, No. 01 Civ. 9862, 2003 WL 42144, at *7 (S.D.N.Y. Jan. 7, 2003); *see also United States v. Hansel*, 70 F.3d 6, 8 (2d Cir. 1995) ("[A]ny error in the grand jury proceedings must be considered harmless in light of Hansel's guilty plea."). Williams is therefore not entitled to relief on any argument that the grand jury proceedings were defective.

C. *Rejection of Motion to Withdraw Plea* (Ground 4)

Finally, Williams contends that the court erred in refusing to allow him to withdraw his guilty plea based on actual innocence.

A defendant who offers a claim of innocence to substantiate altering his plea must overcome "the strong presumption of verity that attaches to his admissions of guilt at his plea allocution."

10

*United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001) (internal quotations and citation omitted). The Second Circuit Court of Appeals has observed that the allocution remarks "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *See Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (citing *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992)). The district court may draw all inferences against the conclusion that the defendant is actually innocent. *See United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997).

In this case, Williams did not present to the sentencing court, and does not present in his Petition, competent and reliable evidence that he is actually innocent of the crime. Rather, Williams merely argues that the evidence against him was not overwhelming. Williams thus fails to overcome his statements at his plea allocution admitting his guilt. An independent review of the record reflects that the plea was made voluntarily and intelligently, and that, contrary to Williams' subsequent assertions, the evidence against him, as detailed above, was quite strong. Williams is therefore not entitled to relief on this ground.

V. CONCLUSION

Williams is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: October 31, 2017.

                                                /s/ James K. Singleton, Jr.
                                                JAMES K. SINGLETON, JR.
                                                Senior United States District Judge